UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLENE RAIFORD,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　　CASE NO.
NORTH CAROLINA CENTRAL　　　)
UNIVERSITY, through the BOARD　)
OF GOVERNORS OF THE　　　　　)
UNIVERSITY OF NORTH　　　　　)
CAROLINA and RAYMOND PIERCE, )
　LAUREN COLLINS,　　　　　　 )
and NICHELLE PERRY in their　　　)
individual capacities.　　　　　　 )
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)
_____

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, Ms. Charlene Raiford, by and through the undersigned counsel, files this

Complaint for relief against Defendants, North Carolina Central University ("NCCU Law

School"), Raymond Pierce, Lauren Collins, and Nichelle Perry, and states as follows:

## I. PRELIMINARY STATEMENT AND BACKGROUND

1.

Ms. Raiford brings this action for discrimination, based upon her age, race, and

retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et

seq., as amended; the Age Discrimination in Employment Act, 29 U.S.C. § 621-634; 42

U.S.C. § 1983; 42 U.S.C. § 1981; and the Equal Protection Clause of the Constitution of

the United States of America. Ms. Raiford seeks actual and compensatory damages;

1

liquidated damages; equitable relief, specifically including prospective equitable relief against Defendants Pierce, Collins and Perry; attorneys' fees; costs of litigation; and any other damages available by law.

## II. THE PARTIES

2.

Plaintiff, Ms. Charlene Raiford, an attorney barred in North Carolina, is a natural person of the United States of America, a resident of the State of North Carolina, in the County of Durham, and a graduate of NCCU Law School.

3.

Defendant, NCCU Law School, is a part of the North Carolina Central University which, through the Board of Governors of the University of North Carolina, is a component of the University of North Carolina, a state institution and governmental body, established pursuant to the laws of the State of North Carolina.

4.

Dean Raymond Pierce ("Dean Pierce") is the current Dean of the NCCU Law School until June 2012 when his contract ends without renewal.

5.

Upon information and belief, Dean Pierce has been the subject of multiple complaints, including, but not limited to, a complaint that he fired NCCU Law School's chief fundraiser in retaliation for the chief fundraiser pointing out Dean Pierce was

2

repeatedly misusing university funds.  <u>See</u> Grievance targets NCCU law dean, attached as Ex. A.

6.

Defendant, Ms. Lauren Collins, an attorney barred in North Carolina, and employee of NCCU Law School, is a natural person of the United States of America, a resident of the State of North Carolina, in the County of Durham. Prior to serving as a reference librarian for multiple universities, Ms. Collins practiced labor and employment law in North Carolina and Michigan. During her tenure as a practicing attorney in the private sector, Ms. Collins provided workplace harassment training.

7.

Defendant, Ms. Nichelle Perry, an attorney barred in North Carolina, and an employee of NCCU Law School, is a natural person of the United States of America, a resident of the State of North Carolina, in the County of Durham.

8.

NCCU Law School is a person within the meaning of 42 U.S.C. § 2000e(a), and is an employer within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b).

<u>**III. JURISDICTION AND VENUE**</u>

9.

This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended; the Age Discrimination in Employment Act, 29

3

U.S.C. § 621-634; 42 U.S.C. § 1983; 42 U.S.C. § 1981; and the Equal Protection Clause of the Constitution of the United States of America.

10.

The subject matter jurisdiction of this Court is invoked pursuant to its original jurisdiction over cases and controversies arising under federal law, pursuant to 28 U.S.C. § 1331.

11.

Venue lies with this Court pursuant to 28 U.S.C. § 1391(b).

12.

All of the acts, omissions, and events complained of herein took place within the City of Durham, North Carolina, in the County of Durham.

### IV. TIMELY COMPLAINTS AND ADMINSTRATIVE EXHAUSTION

13.

On or about January 31, 2011, Ms. Raiford filed a Charge of Discrimination against NCCU Law School with the Equal Employment Opportunity Commission (hereinafter "EEOC").  After various retaliatory acts, on or about March 30, 2011, Ms. Raiford amended her previous EEOC charge to add related retaliation claims, and filed an additional Charge of Discrimination. After a retaliatory performance appraisal, followed by a retaliatory revision of the same, on or about August 2, 2011, Ms. Raiford again amended her EEOC charges and filed an additional charge on the basis of retaliation. After her termination, on or about November 29, 2011, Ms. Raiford complained about the

4

same. On or about December 2, 2011, Ms. Raiford amended the August 2, 2011, charge to include additional information.  See Administrative Exhaustion Documents, including Right to Sue Letters, attached as Exs. B, C, D, E, F and G.  Each document is incorporated as if fully set forth herein.

14.

At all relevant times, NCCU Law School was aware that all of Ms. Raiford's charges and amendments were interrelated, and, for this reason, explicitly incorporated prior position statements into successive position statements.

15.

Upon information and belief, NCCU Law School spoke with Director Collins and Assistant Director Perry about each complaint, and regularly provided copies of NCCU Law School's official positions to Director Collins.

16.

To the extent required by law, Ms. Raiford has exhausted all required administrative remedies and received the appropriate Right to Sue Letters to pursue the relief requested herein.  All claims in this Complaint are properly before this Court.

## V. FACTUAL ALLEGATIONS

17.

At all relevant times, NCCU Law School had a policy encouraging employees to report certain harassment or discrimination as a preventative measure even before it became unlawful.

5

18.

At relevant times, NCCU Law School, as explained below, was aware of an unlawfully hostile environment and failed to make any efforts to stop such unlawful behavior.

19.

Ms. Raiford is a forty-one-year-old African-American female.

20.

NCCU Law School hired Ms. Raiford in or around August 2005 as an Evening Reference Librarian for the law library at NCCU Law School. NCCU offered Ms. Raiford the Student Services Librarian ("SSL") position in or around 2007, and Ms. Raiford accepted the SSL position. Ms. Raiford was not given the official duties of this position and raise until 2009.

21.

In February 2009, Ms. Raiford filed a complaint on the bases of unequal pay, state law violations, improper compensation, discrimination, harassment, and theft of time. The complaint was protected activity under various civil rights statutes.

22.

Ms. Raiford subsequently met with Ms. Susan Hester, Counsel for Chancellor Mr. Charlie Nelms ("NCCU Attorney Hester"), on June 30, 2009, to discuss these issues. Ms. Raiford also met with and discussed these issues with Ms. Anne Lemmon, Associate Vice

President for Human Resources and EEO Officer for the UNC system ("<u>UNC EEO</u> <u>Officer Lemmon</u>").

23.

Shortly after Ms. Raiford's meetings with NCCU Attorney Hester and with UNC EEO Officer Lemmon, Dean Pierce held a library staff meeting about Ms. Raiford's complaints telling the library staff members (i) they would never be able to file any complaints without him knowing about them because he was the Dean; (ii) NCCU Law School would take no action in response to the complaints; (iii) whoever made the complaint was "wasting their time;" and (iv) he promised to "take care of [the complainers]" by getting rid of any complainers whenever presented with the opportunity. Dean Pierce also said if any more complaints were filed, he would fire the complainer. In so doing, he intended to, and actually did, unlawfully chill the exercise of protected activity going-forward.

24.

In response to the staff meeting with Dean Pierce, Ms. Raiford contacted UNC EEO Officer Lemmon to advise her of Dean Pierce's chilling threat and her concerns. In response, UNC EEO Officer Lemmon promised she would contact Chancellor Nelms regarding Dean Pierce's threats.

25.

Later in October 2009, Dean Pierce himself came to Ms. Raiford's office when no one else was present. He told Ms. Raiford that complainers were fired, and he stated

7

unequivocally "I will clean house" (emphasis added). By that, Dean Pierce meant he would use his own power and his power over NCCU Law School employees and others in the NCCU system to fire employees as necessary to stop any complaints.

26.

Ms. Raiford never heard back from NCCU EEO Officer Lemmon, but felt afraid to follow-up in light of Dean Peirce's repeated threats and bullying, including the threats he made to her directly in her office and other threats he had made in other matters, and the power of his position as Dean of NCCU Law School.

27.

Concerned about the threats, Ms. Raiford, nonetheless, continued to remain committed to doing her best in her SSL position.

28.

On June 25, 2010, Ms. Raiford's supervisors, Ms. Lauren Collins, Director of Law Library ("Director Collins") and Ms. Nichelle Perry, Assistant Director of Law Library ("Assistant Director Perry"), gave Ms. Raiford the highest overall rating of "Very Good" on her 2009-2010 Performance Review for the SSL Position. The review is attached as Ex. H.

29.

Ms. Raiford's performance review stated, among other things, that Ms. Raiford, "produces quality work and gives the faculty and students her best. Her teaching evaluations indicate that [Ms. Raiford] is a good teacher who cares about what the

8

students [learn] . . . Members of the faculty who work with [Ms. Raiford] have been very complimentary about [Ms. Raiford's] research skills and work ethic. . . . [Ms. Raiford] effectively organized library workshops and seminars. She took care of coordinating all aspects of the workshops and seminar series. . . . she solicited the other library departments to assist with program logistics in her absence. . . . [Ms. Raiford] is supportive of her colleagues in a number of ways. [Ms. Raiford] is a team player and often offers to cover the reference desk in the event someone is ill or running late. [Ms. Raiford] shares her ideas with colleagues and appears open to receiving input regarding projects."

30.

On or about July 20, 2010, Director Collins and Assistant Director Perry met with Ms. Raiford and offered her a raise and promotion to a newly-created Head of Reference Services ("HRS") position.

31.

Part of the reason NCCU Law School claimed to have offered Ms. Raiford the position was because the position would significantly contribute to Ms. Raiford's professional development.

32.

Responsibilities of the HRS position, a management position, included the supervision and coordination of the law library's reference services department ("RSD") and the reference librarians therein.

9

33.

The person in the HRS position was expected to lead and coordinate the younger reference librarians, who were employees in their mid-twenties. As a manager, the person in the HRS position was also expected to work closely with the other library managers. See Ex. I.

34.

NCCU Law School promised Ms. Raiford that such position was a promotion to a permanent and real management position with a supervisory role. Thus, Ms. Raiford accepted.

35.

Ms. Raiford would not have accepted the position had NCCU Law School informed Ms. Raiford the position was only offered on a "trial basis" and was non-supervisory.

36.

Before approaching Ms. Raiford, NCCU Law School, through Dean Pierce and Director Collins, had already begun advertising for Ms. Raiford's SSL position. Upon information and belief, Dean Pierce was involved in the restructuring of the Law Library, and knew about the same.

37.

Shortly after receiving the promotion to a new position, Ms. Raiford emailed Associate Director Perry to request her position's description, and a list of responsibilities

10

and goals for her position. Ms. Raiford also requested that Assistant Director Perry provide any marketing strategies or other materials that would assist her in performing the duties of her position.

38.

Assistant Director Perry responded to Ms. Raiford's comprehensive requests by sending Ms. Raiford nothing more than a terse strategy plan and a draft of her position description.

39.

To stop Ms. Raiford's inquiries, Assistant Director Perry promised Ms. Raiford that they would meet to clarify the details of the position. Consequently, Ms. Raiford waited for a meeting that never happened. Assistant Director Perry made no efforts to fulfill her promise.

40.

Despite the supervisory nature of Ms. Raiford's HRS management position, Assistant Director Perry encouraged the reference librarians to seek instruction from her and not Ms. Raiford. With increasing intensity, Assistant Director Perry further undermined Ms. Raiford's leadership by siding with Ms. Raiford's subordinates in disputes, by excusing the subordinates from duties without even mentioning the issues to Ms. Raiford, and by canceling assignments Ms. Raiford had given without bothering to even mention anything to Ms. Raiford.

11

41.

During this time, the search process for Ms. Raiford's SSL position continued.

42.

A white female in her mid-forties interviewed for the SSL position.

43.

The younger reference librarians in their mid-twenties told Assistant Director Perry that they did not want to work with the candidate in her mid-forties because the candidate was too old.

44.

Assistant Director Perry never reported or corrected this direct evidence of age discrimination, and in fact, condoned and adopted the comments.

45.

Assistant Director Perry laughed and said her official position would be she decided not to give the older candidate a second interview because she did not like the candidate's "voice." Assistant Director Perry's action condoned such unlawful and discriminatory comments.

46.

Especially given her older age in comparison to the younger reference librarians, and her subordinates' willingness to make blatant age-based discriminatory comments, Ms. Raiford was horrified. Even worse, Assistant Director Perry seemed to accept the comments as part of the selection process.

12

47.

The reference librarians' age-based discrimination influenced the hiring process. Indeed, one of the key components of the position was "fitting in" with the other reference librarians, who made clear they did not want to hire a candidate because she was too old. NCCU Law School sought to hire young candidates who would fit in with the reference librarians' requests.

48.

In October 2010, NCCU Law School filled Ms. Raiford's SSL position with a white female in her mid-twenties.

49.

In so doing, by design, NCCU Law School effectively replaced Ms. Raiford with a white female in her mid-twenties.

50.

Notably, prior to Ms. Raiford's filing of the EEOC Complaint, Director Collins filled six (6) out of the seven (7) library positions with individuals between approximately 20 to 30 years of age. Upon information and belief, Director Collins and NCCU Law School intentionally filled these positions with younger candidates. They expressly considered and gave preferences to young "entry-level" candidates.

13

51.

The age differential between Ms. Raiford and her subordinate employees, in addition to their apparent opposition to working with older colleagues, created an environment of hostile opposition from the younger librarians.

52.

In or around January 2011, two of the younger librarians prepared a legal research assignment for first year law students, but the students were unable to complete the assignments because of the assignment's errors. Ms. Raiford attempted to assist the students but could not locate the materials. Ms. Raiford subsequently sent an email to the librarians about their errors.

53.

Shortly after the email, Ms. Raiford was summoned to Assistant Director Perry's office, where Assistant Director Perry screamed: "You are older than the other librarians and I expected better from you!"

54.

Very shortly after Ms. Raiford's younger, Caucasian replacement began working, and during a weekly meeting on January 5, 2011, Assistant Director Perry reversed course and told Ms. Raiford that she was not a "manager." Ms. Perry also began backtracking on her former promises and stated the HRS position was only offered on a trial basis, and might not lead to a permanent position. In response, Ms. Raiford questioned Assistant Director Perry about the validity of the HRS position. Assistant

14

Director Perry made numerous statements in this meeting that were inconsistent with her prior statements, and the meeting was very disconcerting to Ms. Raiford.

55.

Ms. Raiford wondered if NCCU Law School had lured her into a HRS position with promises of supervisory authority and permanency. Her concerns were reasonable because shortly after her younger, Caucasian replacement began working, NCCU Law School sharply reversed course, telling her the position was not managerial in nature, and had only been offered on a trial basis. In short, NCCU Law School began breaking its promises.

56.

On or about January 20, 2011, Ms. Raiford met with Assistant Director Perry, Director Collins and Ms. Karen Hunter for a departmental meeting and evaluation. Ms. Raiford was told she was doing a "great job" with the department.

57.

Nonetheless, Ms. Raiford remained concerned about her future in light of NCCU Law School's shifting explanation of her role in the department, and Assistant Director Perry's apparent desire to placate the reference librarian's illegal desire to work only with younger employees, who would fit in.

58.

For these reasons, Ms. Raiford sought some assurance of her position, and visited NCCU Law School's Dean Tammy Jackson's office and asked for a copy of her

15

personnel file on or about January 24, 2011. After reviewing the file, Ms. Raiford was shocked that she could not locate any documentation regarding her HRS position. She felt NCCU Law School had fabricated the position. In fact, NCCU Law School had fabricated and misrepresented that nature of the position.

59.

Ms. Raiford attempted to reach out to various people at NCCU Law School and NCCU to discuss her beliefs about the situation and the discrimination, but no one returned her calls in contravention of applicable policies. NCCU Law School was ignoring her complaints.

60.

In light of this, on or about January 31, 2011, Ms. Raiford filed a Charge of Discrimination with the EEOC, alleging, among other things, discrimination on the basis of her age asserting that she was lured from her former position in a deceitful manner, and being replaced by a younger worker. See Ex. B. Ms. Raiford was also concerned in light of Dean Pierce's threats to "clean house" and "get rid" of complainers.

61.

Prior to her complaints, Ms. Raiford had never been reprimanded, written up or suspended during her tenure at NCCU Law School. In fact, she had been promoted to a permanent position with supervisory duties, and told that she was doing a good job with the department as recently as January 2012. But, of course, the nature of that position was influx and pretextual.

16

62.

On or about February 1, 2011, Director Collins summoned Ms. Raiford to her office, and informed Ms. Raiford that she knew Ms. Raiford had been reviewing her personnel file. Director Collins falsely claimed documents for the HRS were not in Ms. Raiford's file only because the Human Resources Department no longer had a secretary. This was untrue and implausible.

63.

On or about February 4, 2011, Ms. Raiford met with Ms. Connie Boone of the NCCU Human Resource Department to review personnel information. In so doing, Ms. Raiford again found no documentation regarding the HRS position.

64.

On or about February 7, 2011, Ms. Raiford approached Assistant Director Perry about the false information and statements that she and Director Collins made about the HRS position. However, Assistant Director Perry refused to address any of Ms. Raiford's concerns.

65.

Upon information and belief, Dean Pierce, Director Collins, and Assistant Director Perry knew about the EEO complaint soon after Ms. Raiford filed the complaint. Upon information and belief, through these individuals, the news of the complaint spread throughout NCCU Law School and the law library, in particular, and within a month

many people, including Director Collins and Assistant Director Perry, stopped talking to Ms. Raiford almost altogether, avoiding Ms. Raiford, and giving her the silent treatment.

66.

From February 2011 to September 2011, Director Collins and Assistant Director Perry retaliated against Ms. Raiford for participating in protected activity.

67.

Less than three (3) weeks after filing charges of discrimination, on or about February 14, 2011, Director Collins canceled Ms. Raiford's departmental meeting and Assistant Director Perry canceled Ms. Raiford's weekly meeting. Cancelling these meetings was unprecedented, and significantly impacted Ms. Raiford's professional development and ability to participate in the workplace.

68.

On or about February 16, 2011, approximately six (6) months after Ms. Raiford accepted the HRS position, Director Collins emailed a memorandum purporting to clarify the scope of Ms. Raiford's duties as HRS. This memorandum contained many inaccuracies and mischaracterizations of Assistant Director Perry's prior promises. Ms. Raiford responded by stating that she disagreed with the accuracy of the facts as presented in the memo. As explained in the memorandum, the position was less desirable, less prestigious, and less lucrative than the position previously explained and offered to her.

69.

On or about February 21, 2011, Director Collins held a one-hour meeting with all of the other librarians—excluding Ms. Raiford. Upon information and belief, Director Collins statements about Ms. Raiford in the meeting had a deleterious effect on Ms. Raiford's status in the department.

70.

After this meeting, all of the other reference librarians almost altogether stopped speaking with Ms. Raiford. Ms. Raiford was isolated. This distressed Ms. Raiford greatly.

71.

Assistant Director Perry conducted many subsequent department meetings, excluding only Ms. Raiford. On the Outlook Library Calendar, NCCU Law School would cancel the management meetings Ms. Raiford should have attended, but then have the meetings without Ms. Raiford in secret, anyway. Ms. Raiford's exclusion from the meetings kept her from being able to perform key professional duties, and significantly harmed Ms. Raiford's professional development. Assistant Director Perry also excluded Ms. Raiford from participating in other department activities such as recruitment.

72.

Because of her protected activity, Assistant Director Perry began to scrutinize Ms. Raiford's actions and performance in a manner that she had not done prior to the filing of Ms. Raiford's EEOC Charge of Discrimination. Among her co-workers, Ms.

19

Raiford was singled out for scrutiny because of her EEO complaint. Specifically, Director Collins and Assistant Director Perry also began scrutinizing Ms. Raiford's assignments, postings on the library blogs, and other submissions to an extent they had never done before, and to a greater extent that they did to the other department members, who had never made any EEO complaints. They were taking these actions because of Ms. Raiford's protected activity, and to create a misleading record of Ms. Raiford's performance. NCCU Law School's attempt to "paper" Ms. Raiford's file and create an intolerable working environment are corroborated by the untrue or otherwise inexplicable actions they took.

73.

As an example, in subsequent months, Assistant Director Perry closely monitored Ms. Raiford by walking by Ms. Raiford's office up to eight (8) to ten (10) times per day, frequently peering in, staring, and glaring directly at Ms. Raiford. Before Ms. Raiford engaged in protected activity, Assistant Director Perry did not walk by Ms. Raiford's office numerous times a day, and stare at her. Assistant Director Perry's behavior was threatening, offensive, and constituted retaliatory harassment.

74.

Once, a library clerk told Ms. Raiford, Assistant Director Perry had been secretly watching Ms. Raiford, but Assistant Director Perry ran away as soon as she was caught.

75.

As another example, on or about February 28, 2012, without prior notice,

20

Director Collins removed Ms. Raiford's blog post about a student's achievement of winning his case before the North Carolina Appellate Court. The post had been up for ten days prior to its removal. The incident was highly embarrassing to Ms. Raiford because the student had already provided the blog link to many friends and family members.

76.

As a further example, Assistant Director Perry also chided Ms. Raiford for using language in blog posts that other librarians had used without objection.

77.

Around this time, members from NCCU Law School's Human Resource Department began singling out Ms. Raiford for increased scrutiny too. Members for Human Resources began attending weekly meetings after Ms. Raiford filed the EEOC complaint, and they had never done so before.

78.

In or around March 2011, Assistant Director Perry also unduly scrutinized Ms. Raiford's calendar entries and falsely accused her of not entering vacation/sick/comp days on the shared librarian calendar. Assistant Director Perry also falsely accused Ms. Raiford of making changes to the calendar. Upon information and belief, Assistant Director Perry made the changes herself to create a false record of Ms. Raiford's purported improprieties. Also, Director Collins and Assistant Director Perry would set up IT appointments or services for Ms. Raiford's computer, but the IT employees would

21

tell Ms. Raiford they could see the entries and there was no problem.

79.

On or about April 21, 2011, Ms. Raiford contacted the University's IT department which confirmed that Ms. Raiford did not have access or authorization to change the outlook calendars. The IT department stated a member from the Law School's IT department or her supervisor had changed the calendars. After Ms. Raiford reported her discovery to the IT department, management's harassment regarding the calendar usage ceased.

80.

On or about March 21 and 24, 2011, Ms. Raiford received an email from Assistant Director Perry reprimanding Ms. Raiford for not submitting two (2) library guides ("libguides"). Ms. Raiford was never told that she was required to prepare two (2) libguides. The reprimand was unwarranted because Ms. Raiford was only required to prepare one (1) libguide per prior directions. See Email From Assistant Director Perry, attached as Ex. J.

81.

On or about March 21, 2011, Director Collins stripped Ms. Raiford of her supervisory duties and removed Ms. Raiford from the HRS position without an investigation or hearing. Director Collins stripped Ms. Raiford of her duties because of Ms. Raiford's protected activity. Ms. Raiford subsequently received a memorandum stating that she was being removed from the position. See Memorandum, attached as

22

Ex. K.  Director Collin's decision to strip Ms. Raiford of her duties took duties away from Ms. Raiford that were key professional duties that significantly contributed to Ms. Raiford's professional development.

82.

After being demoted, Ms. Raiford amended her previous EEOC Charge of Discrimination on or about March 30, 2011. <u>See</u> Ex. B.

83.

After Ms. Raiford was stripped of her management duties, Assistant Director Perry did not assign Ms. Raiford any specific duties.  Unlike the other librarians who were assigned specific duties, including student services, faculty services and electronic services, Ms. Raiford served only in a general capacity.  This harmed Ms. Raiford's ability to succeed in the department.

84.

Shortly after Ms. Raiford's additional EEOC filings, on or about April 1, 2011, Ms. Raiford met with Director Collins and Assistant Director Perry.  Director Collins told Ms. Raiford that she was a "troublemaker" because of what she was doing to the department, and she should "fix it"—in other words, Ms. Raiford should stop trying to engage in protected activity. Director Collins told Ms. Raiford that she did not care if the faculty or students liked Ms. Raiford, what mattered was whether they liked her.

85.

On or about April 13, 2011, Ms. Raiford received an after-the-fact memorandum

23

from Director Collins that attempted to justify her reasons for removing Ms. Raiford from the HRS position. Ms. Raiford expressed her disagreement regarding the accuracy of the facts presented in the memorandum. See Memorandum, attached as Ex. L. The memorandum contained false and defamatory statements. As just one example, Director Collins and Assistant Director Perry claimed that Ms. Raiford told the librarians not to make direct contact with students. Yet, Ms. Raiford encouraged the librarians to talk to students about workshops and contests even though Michelle Cosby and Yolonda Harrison seemed reluctant to interact with the students. Such was the case when Ms. Harrison's Facebook campaign failed to meet the goal of 100 fans after weeks of campaigning. Ms. Raiford talked to the students and encouraged them to join. In two days, Ms. Raiford's actions increased the library's Facebook fans from 20 to 91 because of face-to-face interactions. Further, on October 7, 2010, Ms. Raiford had sent both librarians an email encouraging them to interact with students.

86.

On May 2, 2011, as further evidence of her intent, Assistant Director Perry stood outside Ms. Raiford's door and began cursing and yelling at Ms. Raiford about a chair that Ms. Raiford was using. Assistant Director Perry told Ms. Raiford "to get that chair out your office right now!" Ms. Raiford attempted to explain why the chair was in her office, but Assistant Director Perry nonetheless required Ms. Raiford to carry the heavy chair out of the office. On the same date, Ms. Raiford called and emailed Mr. Lawrence Edmendson, the University's Industrial Hygienist who had previously done an

24

ergonomic assessment on Ms. Raiford's office.  Mr. Edmendson indicated that he has submitted his recommendation to Assistant Director Perry so she was well aware of Ms. Raiford's problems and he had directed the Law Library to purchase new chairs. Shortly thereafter, Mr. Greg Clinton returned the chair that Assistant Director Perry had required Ms. Raiford remove from her office.

87.

On or about July 6, 2011, Ms. Raiford received a negative performance evaluation in retaliation for her EEO filings and oppositional activity.  Many of the deficiencies cited in her performance evaluation were more pertinent to her previous HRS position than the position to which she had been demoted.  Further, the negative performance evaluation was unusually harsh, contained misrepresentations, and blamed Ms. Raiford in part for an atmosphere of retaliatory harassment Director Collins and Assistant Director Perry had ordered and created themselves. <u>See</u> Review, attached as Ex. M.  For instance, Director Collins and Assistant Director Perry alleged that Ms. Raiford never collaborated with the other librarians in threes or pairs. Yet, Ms. Raiford participated in the Prepare to Practice Series hosted by Patricia Dickerson. Ms. Raiford also collaborated with the librarians on 2010 Fall Orientation, the Facebook Contest and various other projects.

88.

After reviewing the evaluation, Ms. Raiford requested that Assistant Director Perry change the evaluation to reflect the various titles that Ms. Raiford held during the 2010-2011 school year. Ms. Raiford also asked for the academic goals and expectations that

25

were required by the University of North Carolina system for each position, in an email to Assistant Director Perry dated July 8, 2011. In response, Assistant Director Perry changed the evaluation to reflect Ms. Raiford's multiple titles. At this point, she also added additional negative comments in retaliation. See Revised Retaliatory Review, attached as Ex. N.

89.

Assistant Director Perry could not provide Ms. Raiford with any goals and expectations, and admitted that she never provided Ms. Raiford with the requested information. Notably, the other law librarians received documentation describing the goals and expectations of their respective positions, which allowed the librarians to gauge their performance.

90.

Subsequently, Ms. Raiford received a packet that consisted of a copy of her evaluation and Performance Improvement Plan ("PIP"), a document that NCCU Law School had never previously been provided to Ms. Raiford.

91.

The PIP included a notation from Assistant Director Perry indicating that Ms. Raiford refused to sign the document, even though in actuality, Ms. Raiford never received a copy of the document. Assistant Director Perry had created false documentation against Ms. Raiford to set her up for termination, and in violation of the law.

26

92.

From July 2011 until Ms. Raiford's date of discharge, Assistant Director Perry gave Ms. Raiford assignments that would be subsequently changed with little or no notice.

93.

When Ms. Raiford sought assistance or clarification, Assistant Director Perry refused to assist Ms. Raiford, despite the regular assistance she provided to the other librarians. Simply put, Assistant Director Perry was setting Ms. Raiford up to fail.

94.

For instance, Assistant Director Perry also gave Ms. Raiford repeated inconsistent directions regarding the hiring of a reference student. The rapidly-changing directions and admonishments related to the same were harassing and retaliatory.

95.

In late August 2011, while on leave and caring for her ill child, Ms. Raiford was told that an assignment she had completed and submitted on or about August 15, 2011, would need to be redone immediately. However, instead of allowing Ms. Raiford to complete the revisions as she pledged to do, library officials removed her from the project and gave it to another librarian. Upon information and belief, the assignment was significantly relaxed for the new librarian, who had not filed any EEO complaints.

96.

On or about September 7, 2011, Assistant Director Perry sent an email to the librarians stating that in an effort to provide librarians with relevant feedback regarding their teaching techniques and styles, she was asking Mr. Brian Schriener to record librarians' lectures. Although the School of Law has never recorded any classes without the respective professor's consent, on or about September 8, 2011, Director Collins told Ms. Raiford that her class would be recorded regardless of her consent. Ms. Raiford subsequently addressed her concerns with Dean Wendy Scott, who stated that she did not know the University's policy regarding class recording, and promised that Ms. Raiford's classes would not be recorded until she could provide Ms. Raiford with the policy. Ms. Raiford subsequently contacted the University attorney regarding the matter via email, but received no applicable information in response to her inquiry.

97.

On or about Saturday, September 10, 2011, Assistant Director Perry sent a new assignment to Ms. Raiford's University email account, and stated that the deadline for the assignment was Monday, September 12, 2011, at 10:00AM. However, as Assistant Director Perry knew or should have known, Ms. Raiford was not scheduled to work during the weekend, and Ms. Raiford was not scheduled to return to work until Monday, September 12, 2011, at 12:00PM.

98.

Although she was under no obligation to do so, Ms. Raiford checked her University email account over the weekend and learned of the assignment.

99.

She subsequently informed Assistant Director Perry, on or about Monday, September 12, 2011, that she would work to complete the project, but that she considered the manner of the assignment harassing in nature.

100.

On or about September 12, 2011, during a class taught by Ms. Raiford, she noticed that she was being recorded and mentioned it after class to a library staff member.

101.

During a subsequent class taught by Ms. Raiford on September 14, 2011, a message appeared on Ms. Raiford's PowerPoint stating that a recording had been interrupted.

102.

Ms. Raiford addressed the incident with IT administration via email on September 14, 2011, and September 15, 2011, and thereafter received notice that the recording was purportedly the result of a mistake.

103.

On or about September 15, 2011, Ms. Raiford attended a meeting with University officials, assuming that her performance under the PIP would be discussed. However,

upon attending the meeting, Ms. Raiford was simply notified that the University intended to terminate her employment.

104.

Dean Pierce, who had earlier threatened to terminate complainers if given the opportunity, made the decision, and refused to provide any explanation.

105.

This was the first time Dean Pierce had the opportunity to retaliate against Ms. Raiford since threatening her.

106.

Alternatively, upon information and belief, Dean Pierce was aware of Ms. Raiford's complaints, and used his own power and power over other NCCU Law School employees to "get rid of" Ms. Raiford and "clean house," as threatened.

107.

Ms. Raiford did not receive any justification for her termination.

108.

Following her discharge, the law library advertised the Faculty Services Librarian position, a position previously held by a significantly younger librarian who was, consequently, promoted to Senior Reference Librarian and Instructional Coordinator, a position the library never advertised.

109.

Dean Pierce and NCCU Law School insist Ms. Raiford's termination had nothing

30

to do with her performance.  They admit they had no cause to fire her.

110.

Ms. Raiford was terminated because of her protected activity.

111.

NCCU Law School repeatedly failed to address any of Ms. Raiford's concerns or stop the retaliatory harassment.

## COUNT I: Violation of the Title VII of the Civil Rights Act of 1964

## Race Discrimination

### 112.

Ms. Raiford incorporates by reference paragraphs 1 - 111 of her complaint as if fully set forth herein.

### 113.

Ms. Raiford is African-American, a protected class under Title VII of the Civil Rights Act of 1964.

### 114.

At all times relevant to this Complaint, NCCU Law School was aware of Ms. Raiford's race.

### 115.

NCCU Law School treated Ms. Raiford less favorably than similarly situated employees who are not African-American.

### 116.

Ms. Raiford was threatened, demoted, subjected to heightened scrutiny, increased surveillance, exclusion and isolation, changes in job duties, a negative evaluation, threats and was ultimately terminated from her employment by NCCU Law School on or about September 15, 2011.

117.

NCCU Law School discriminated against Ms. Raiford on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended.

118.

Ms. Raiford is now suffering and will continue to suffer irreparable injury and monetary damages as a result of NCCU Law School's discriminatory practices unless and until the Court grants relief.

**COUNT II: Violation of the Title VII of the Civil Rights Act of 1964**

**Retaliation**

119.

Ms. Raiford incorporates by reference paragraphs 1 - 111 of her complaint as if fully set forth herein.

120.

Ms. Raiford filed charges with the EEOC on or about January 31, 2011, March 30, 2011, and November 29, 2011, which constitute protected activities under Title VII of the Civil Rights Act of 1964.

121.

At the time of the discriminatory actions described herein, NCCU Law School was aware of Ms. Raiford's protected activity.

122.

NCCU Law School treated Ms. Raiford less favorably than similarly situated employees who did not engage in protected activity as defined by Title VII of the Civil Rights Act of 1964.

123.

Ms. Raiford was threatened, demoted, subjected to heightened scrutiny, increased surveillance, exclusion and isolation, changes in job duties, a negative evaluation, threats and was ultimately terminated from her employment by NCCU Law School on or about September 15, 2011.

124.

NCCU Law School discriminated against Ms. Raiford on the basis of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended.

125.

Ms. Raiford is now suffering and will continue to suffer irreparable injury and monetary damages as a result of NCCU Law School's retaliatory practices unless and until the Court grants relief.

## COUNT III: Violation of the Age Discrimination in Employment Act

126.

Ms. Raiford incorporates by reference paragraphs 1 - 111 of her complaint as if fully set forth herein.

127.

Ms. Raiford is approximately forty-one (41) years of age, and therefore comes under the protection of the Age Discrimination in Employment Act, 29 U.S.C. § 621-634.

128.

At the time of the discriminatory actions described herein, NCCU Law School was aware of Ms. Raiford's age or approximate age.

129.

NCCU Law School treated Ms. Raiford less favorably than younger, similarly situated employees.

130.

Ms. Raiford was threatened, demoted, subjected to heightened scrutiny, increased surveillance, exclusion and isolation, changes in job duties, a negative evaluation, threats and was ultimately terminated from her employment by NCCU Law School on or about September 15, 2011.

131.

NCCU Law School discriminated against Ms. Raiford on the basis of age in violation of Age Discrimination in Employment Act, 29 U.S.C. § 621-634.

132.

Ms. Raiford is now suffering and will continue to suffer irreparable injury and monetary damages as a result of NCCU Law School's discriminatory practices unless and until the Court grants relief.

## COUNT IV: Violation of the Age Discrimination in Employment Act

## Retaliation

### 133.

Ms. Raiford incorporates by reference paragraphs 1 - 111 of her complaint as if fully set forth herein.

### 134.

Ms. Raiford is approximately forty-one (41) years of age, and therefore comes under the protection of the Age Discrimination in Employment Act, 29 U.S.C. § 621-634. Moreover, Ms. Raiford filed a charge with the EEOC on the basis of age discrimination on or about January 31, 2011.

### 135.

At the time of the discriminatory actions described herein, NCCU Law School was aware of Ms. Raiford's protected activity in the form of a charge filed with the EEOC.

### 136.

NCCU Law School treated Ms. Raiford less favorably than similarly situated employees who did not engage in protected activity as defined by the Age Discrimination in Employment Act, 29 U.S.C. § 621-634.

### 137.

Ms. Raiford was threatened, demoted, subjected to heightened scrutiny, increased surveillance, exclusion and isolation, changes in job duties, a negative evaluation, threats

and was ultimately terminated from her employment by NCCU Law School on or about September 15, 2011.

138.

NCCU Law School discriminated against Ms. Raiford on the basis of age in violation of Age Discrimination in Employment Act, 29 U.S.C. § 621-634.

139.

Ms. Raiford is now suffering and will continue to suffer irreparable injury and monetary damages as a result of NCCU Law School's discriminatory practices unless and until the Court grants relief.

**COUNT V: Violation of 42 U.S.C. § 1983**

**Equal Protection Pursuant to the Fourteenth Amendment and Section 1981**

140.

Ms. Raiford incorporates by reference paragraphs 1 - 111 of her complaint as if fully set forth herein.

141.

Ms. Raiford, an African-American, was denied equal protection under color of law on the basis of her race by NCCU Law School, a state entity founded pursuant to the laws of the State of North Carolina.

142.

At all times relevant to this Complaint, NCCU Law School was aware of Ms. Raiford's race.

37

143.

Ms. Raiford was threatened, demoted, subjected to heightened scrutiny, increased surveillance, exclusion and isolation, changes in job duties, a negative evaluation, threats and was ultimately terminated from her employment by NCCU Law School on or about September 15, 2011.

144.

NCCU Law School discriminated against Ms. Raiford on the basis of her race in violation of the Fourteenth Amendment.

145.

Ms. Raiford is now suffering and will continue to suffer irreparable injury and monetary damages as a result of NCCU Law School's discriminatory practices unless and until the Court grants relief.

## VI. PRAYER FOR RELIEF

All conditions precedent to filing of suit have been performed or have occurred prior to the date of this Complaint.

WHEREFORE, Ms. Charlene Raiford prays that the Court grant the following relief:

(a) Award compensatory damages to Ms. Raiford to fully compensate her for the loss of pay, pain and suffering, and medical expenses resulting from NCCU Law School's discriminatory conduct alleged herein; and

(b) Award additional relief as justice may require, together with Ms. Raiford's costs and fees disbursed as a result of this action.

## VII. JURY DEMAND

Ms. Raiford hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

    /s/ Lee Andrews
Lee Andrews
North Carolina Bar No. 105
P.O Box 21472
Greensboro, NC 274020
Voice 336.378.0524
Email Lee_andrews@bellsouth.net


**MELVILLE JOHNSON, P.C.**

    /s/ Matthew Johnson
Matthew Johnson
Georgia Bar No. 940675
Shaun Southworth
Missouri Bar No. 62239
22 Seventh Street N.E.
Atlanta, Georgia 30308
Voice 404.724.0000
Facsimile 404.724.0040
Email mjohnson@melvillejohnson.com
      ssouthworth@melvillejohnson.com